Birchard, Judge,
dissenting. I can not deny but that the opinion given in the case of the Canal Boat Huron v. Simmons, 11 Ohio, 458, is broad enough to embrace this ease, and to sustain the reversal of the judgment of the court of Common Pleas. But I do not regard that decision as definitely settling the law, because the same question had been twice differently ruled upon the circuit, by Judge Wood and myself; and the case in 11 Ohio, was, in fact, determined by three judges, (in consequence of my having been counsel for one of the parties,) and one of the three dissented. So far, then, as the question depends upon the opinions of this court, it remains, as I conceive, unsettled, the authority being equally balanced.
I shall therefore examine the law of the ease with perfect freedom, and endeavor to show that the Court of Common Pleas did not err. 'The facts are these : The schooner Cleveland was attached to recover the wages of a mariner employed to navigate her. The proceeding is one wholly unknown to the common law, and can not be sustained, unless it be provided for in the act of 1840. Swan’s Stat. 209. The question to be settled, is, does that statute give this remedy ? Before attempting to answer this inquiry, it may be well to recur to first principles, and see what rules of construction should be applied to an act of this nature. The part of the act'relied upon reads thus: *346 345] “ Steamboats and other watercraft *navigating the waters within, or bordering upon this state, shall be liable for debts contracted on account thereof, by the master, steward, consignee or other agent, for materials, supplies or labor in the building, repairing, furnishing or equipping the same.” The statute gives a remedy which is an innovation upon the common law. It disregards the contracts of the parties. It makes what may be the property of one man responsible for the contract or defaults of another. All the books inform us that such a statute should not receive a latitudinous construction ; that it ought not to be extended, by implication, beyond the fair legitimate meaning of the words contained in it. Now the debt contracted for mariners’ wages can not well be considered as a debt contracted for either materials or supplies. It is not a debt contracted for labor in. building or repairing the schooner.
Let us see if the supposition, that a debt, contracted for mariner’s wages is a debt “ for labor in furnishing or equipping ” a vessel, will-stand the test of an examination. In the first place the labor of a common seaman is no part of a vessel’s furniture — no part of its equipage; nor is it labor expended in procuring the one or the other. Still, it must be held to be one or both, otherwise the judgment of the court of Common Pleas is not erroneous. It is said, in the opinion,, in 11 Ohio, that to limit the remedy given against the boat, to such supplies or materials, employed in building, repairing, furnishing or equipping the same, as become a part of her, and not embracing such as are daily consumed and replaced, would be too narrow a Construction to meet the intention of the Legislature. Could we travel without the statute for the purpose of gathering the intention of the Legislature, it could be proved to the satisfaction of any jury, that it was the express intent of the very committee that reported the bill, to give the remedy the precise limitation which that opinion holds to be too narrow. I am authorized by a member of the Judiciary Committee, a lawyer of talents and experience, to state, that the point was discussed when the bill was under consideration, and that it could not have be-34,6] come a law, had the Judiciary Committee ^supposed it susceptible of the interpretation it received in the 11 Ohio. I am much mistaken if it received in that case a correct construction.
“ Shall be liable for debts contracted on account thereof,” means on account of the craft; and the debt must not only be contracted on account of the craft, but must be a debt for supplies, materials or labor in the building, repairing, furnishing or equipping the craft- *347 For all these the owner of the craft would be liable by commercial' law. For current expenses in running a boat he might, upon principles of equity, or might not be liable, according to the circumstances ; and there is not one word in the act touching the subject of contracts which discloses a legislative intention to give a remedy that would do violence to common justice, as between man and man. The legislative intention, assumed to be the true one in the 11 Ohio, seems to depend altogether upon the supposed use of the words, “ steward” and “ supplies,” as employed by the Legislature. The argument is this: — A boat is not furnished that has no provisions on board. It is tbe steward’s business to furnish and supply the boat with eatables ; therefore he can contract for nothing else. The craft may be attached for debts contracted by the steward on account of the craft; and, therefore, the provisions daily provided by him, and daily consumed-on the boat, are part of the boat’s furniture or equipage, and are provided on account of the boat or its owner, and not on account of the persons who navigate the same. Is such reasoning consistent and-proper? Is it safe and judicious ? According to the usual acceptation of words, we should, by the term equipage, as applied to watercraft, understand the anchors, chains, sails, cables, tackle, etc.; and, by furniture, not that which was to be eaten or drank by the passengers and crew, although contracted for by the steward. The reason is palpable. Boats and other watercraft, particularly canal boats, are-often owned by one person, and hired and run by another. Whatever is furnished or supplied to aid in building, repairing, furnishing or equipping the boat, is, with propriety, said to be furnished on account of the boat. The procuring of hands, of ^stores and provi- [34T sions for daily consumption, is always at the expense of him who runs and employs the craft; and unless language be forced, and made to mean something which is neither technical, nor according to its common acceptation, we have no authority, in the statute itself, for saying that the Legislature intended to give the action in rem, for the recovery of mariners’ wages, and provisions daily consumed by the crew.. The word “ steward,” as employed in the act, may have its appropriate meaning, without intending the signification of any other word of the statute beyond its ordinary acceptation. It can not be denied that the owner of a watercraft may intrust the steward with the power of contracting for repairs, for carpets, tables, chairs, settees, matresses, sails, cables or anchors ; indeed, for every thing constituting the furniture and equipage of a canal boat, steamboat, ship or other vessel. It is *348 believed that, as to many of these articles on some of the waters of the state, the steward has been usually intrusted with the duty of making the purchases. They are articles which he has charge of, the value of which he knows ; which, like the repairs, benefit the owner, and become a part of the craft. If this is so, all the words of the statute have a natural and appropriate meaning; and are effective, without distortion, and without forcing upon us the unwelcome task of saying, that the Legislature of Ohio, not knowing the power of language, used common words in an absurd sense.
The statute of New York, of August 10, 1798, (vol. 1, R. Laws of 1813, p. 130,) provides for proceedings in rem the same as does our statute. It declares “ that ships or vessels of all descriptions, etc., shall be liable for all debts contracted by the master or commander, owner or consignee thereof, on account of any work done, or any supplies or materials furnished by any mechanic or tradesman, or others, on account or towards the building, repairing, fitting, furnishing or equipping such ships or veesels.” In commenting upon this statute, 11 Ohio, 461, it is said the word “ supplies” is not in the statute of New York, and that it was to be presumed that the Legislature were 348] aware of the construction put upon the New York statute, *in Johnson v. Steamboat Sandusky, 5 Wend. 510, and inserted the words, “ stewards” and “ supplies,” to avoid it. I readily admit the presumption of knowledge on the part of the Legislature, both of the New York statute, and the case in 5 Wendell; but I can, by no means, admit that they undertook to avoid that construction in the way supposed, Because it is perfectly fair to presume, that they also knew how New York had effected that object; for they could not have looked into the New York statutes without meeting with the Revised Code of 1829, and, on page 493, of vol. 2, they would have found the revised statute read thus — “ Whenever a debt, amounting to fifty dollars or upwards, shall be contracted by the master, owner, agent or consignee ■of any ship or vessel within this state, for either of the followihg purposes — 1st: On account of any work done, or materials or articles furnished in this State, for or towards the building, repairing, fitting, furnishing or equipping such ship or vessel; 2d: For such provisions and stores, furnished within this state, as may be fit and proper for the use of such vessel, at the time when the same were furnisned ; 3d : -On account of wharfage, and the expenses of keeping such a vessel in port, including the expense incurred in employing persons to watch her ; such debt shall be a lien upon such ship or vessel, her tackel, *349 apparel and furniture, and shall be preferred to all other liens thereon except mariner’s wages.” The act then provides for an attachment, etc., all of which tend to prove that, in New York, mariners’ wages, and ships’ stores and provisions, are not supposed to be part of a vessel’s furniture or equipage.
The New York statute of 1798 contains, in fact, every word of our own, from which any legal, inference can be drawn capable of throwing light upon the class of claims for which the watercraft may be-proceeded against by name, and the word “ fitting” is superadded. The words, “ steward” or “ agent,” as used in our statute, do not alter the class of claims recoverable in this mode at all, and were never used by the Legislature for that purpose. There is, then, no reason to suppose that it was intended to employ the terms, “ furnishing” and “ equipping,” *in a new sense, so as to make them mean one thing [349 in New, York, and another in Ohio.
The case of Johnson v. The Sandusky was brought to recover an account for wood furnished as fuel, and the court said, (p. 512,) “ It would hardly be contended that the butcher or baker or grocer who supplied a steamboat would have a lien under this act (the act of 1798.) The supplies contemplated by the act, it appears to me, must-be such as enter into the construction or equipment of a vessel, and. become a part of her, and not such as are daily consumed and constantly replaced. They must be such as go toward the building, repairing, fitting, furnishing and equipping a vessel.” Cook v. Slack, 21 Wend. 177 ; Hubbel v. Dennison, Ibid. 181.
But it was said that the New York statute is nothing but a lien law, while our statute treats the boat as a person, and makes it responsible in its own name ; that it is equitable in its object, “ and will receive a liberal construction, to carry the design of its enactment into effect.”
I would, out of respect to my brethren, pass over this passage, were it not likely to prejudice, most seriously, great and important interests - of our people. Ohio is bounded upon the north and the south by navigable waters, and is not excelled by any state in the facilities of internal navigation. Watercraft of various kinds, to the amount of several thousands per annum, are engaged in her carrying trade. Many of them are owned by one person or company, and hired and navigated by others, touching and trading at the various places which border upon the lake, the rivers, or the canals. It is a great hardship to the owner, so hiring out his boat or vessel, to have it attached years afterwards, perhaps at a distant port, and taken from him to satisfy as *351 demand of which he never heard, and had no means of knowledge prior to the attachment. The construction is oppressive to the trade of the state. No prudent man will purchase such property, because no foresight, no investigation, will enable him to ascertain the amount of debts remaining unpaid for a series of years, for the running ex-350] penses of a boat. Take, for instance, a steamboat upon *Lake Erie, which has been notoriously run at great profit. It is levied upon to satisfy a debt, but it will not sell at any port in Michigan, Ohio, New York or Pennsylvania, for a tithe of its value, because all commercial men know that the fuel and stores and provisions used by it during the business season of one or two years greatly exceed its entire value, and no man can tell the times and places when and where debts for fuel, stores, and provisions were contracted, or whether any 'thing is still due, or the amount of it. The inevitable result is that-the steamboat is sacrificed, and brings only what its wreck would be worth. Such has, at all events, been the effect of the decision in the case of Canal Boat Huron v. Simmons in one portion of this state Regarding it as of vast importance to the trade of the state, as well as essentially wrong, I should not be satisfied that my duty'to the public was performed did I neglect this opportunity of endeavoring to weaken the doctrine of that case in its infancy before age has given it much strength. Why it can be said that the New York statute is nothing but a lien-law, and is therefore dissimilar to ours, is more than I can ■ comprehend. Surely it gives the right to proceed against the ship or vessel by name. It authorizes the proceeding in rem, the same as does ours. That our statute is equitable, when construed as intended by the legislature, need not be denied. When so construed as to throw the current expenses of running a steam or canal boat upon the owner, who has hired out his boat to be run by another at his own expense, the supposed equity is not very perceptible. Indeed it seems no greater than the equity of a merchant against a road wagon, for the price of a coat sold to a teamster driving it as a hired wagon, which, in fact, would be just no equity at all. On the other hand, if the ■ charges upon the boat or schooner be confined to debts contracted for building, repairs, furniture, or equipage, agreeably to the doctrine in ;'5 Wend, the owner of the vessel would be liable in equity, because all these things would inure to his benefit, and the inconveniences above pointed out would be essentially lessened. All the repairs, all the new ■ 351] furniture and equipage, would be apparent *to the owner, or to :a purchaser at sheriff’s sale, and by inquiry they could ascertain when *352 and where they were made and procured, the cost of the same, and whether the claims remain unsatisfied, and a lien upon the craft. Should this statute receive a strict construction ? Let the authorities answer. In Pool v. Neal, 2 Sid. 63, it is said “that a statute which gives a new remedy ought not to receive a liberal construction.” In 10 Rep. 75, aud Strange, 258, that “ a statute creating a new jurisdiction ought to be construed strictly.” In Lofft. 438, “ That a power derogatory to private property must be construed strictly, and not enlarged by intendment.” Dwarris, 756, “ When the meaning of a statute is doubtful, the consequences are to be considered in the construction, for the courts will not construe acts of Parliament so as to admit of any absurd consequences.” “No statute shall be so construed as to be inconvenient and against reason.” 10 Mod. 344 ; Coke Litt. 381, 386 ; Cowdrie’s case, 5 Rep. “ Where a statute will bear two interjpretations, one contrary to plain sense, the other agreeable to it, the latter shall prevail.” 8 Rep. 118. “ Words of a statute ought not to be expounded to destroy natural justice.” Sty. 81.